NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORMA J. LEJON,<br><br>      Plaintiff - Appellant,<br><br>v.<br><br>CAROLYN W. COLVIN[*], Acting<br>Commissioner of Social Security,<br><br>      Defendant - Appellee. | No. 23-3216<br><br>D.C. No.<br>3:22-cv-05853-DWC<br><br>MEMORANDUM[**] |

Appeal from the United States District Court
for the Western District of Washington
David W. Christel, Magistrate Judge, Presiding

Submitted December 3, 2024[***]
Portland, Oregon

Before: CALLAHAN, NGUYEN, and SUNG, Circuit Judges.

---

    [*]      Carolyn W. Colvin is substituted for her predecessor Martin O'Malley, Commissioner of the Social Security Administration, as Acting Commissioner of the Social Security Administration, pursuant to Federal Rule of Appellate Procedure 43(c).

    [**]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [***]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Norma J. Lejon appeals the district court's judgment affirming the Social Security Commissioner's denial of her application for social security benefits. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's decision de novo and reverse the denial of benefits only if the decision of the Administrative Law Judge (ALJ) "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla but may be less than a preponderance." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (cleaned up). "We may not reweigh the evidence or substitute our judgment for that of the ALJ. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. When the evidence can rationally be interpreted in more than one way, the court must uphold the ALJ's decision." *Id.* at 1115–16 (cleaned up). Finding no error, we affirm.

1. The ALJ properly evaluated the medical evidence. Governing regulations require the ALJ to evaluate the persuasiveness of each medical opinion based on supportability and consistency. *See* 20 C.F.R. § 416.920c(a)–(b). The ALJ must then "translat[e] and incorporat[e]" the evidence into a "succinct" residual functional capacity (RFC). *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Here, the ALJ properly evaluated the opinions of Dr.

23-3216

Johnson and Dr. Meharg for supportability and consistency. The ALJ then concluded that Lejon could no longer perform any of her past work, but had the RFC to perform "light work" involving simple, routine, repetitive tasks with a reasoning level of 1-2, with breaks every two hours, a sit/stand option, and other limitations. This RFC finding is consistent with Dr. Johnson's conclusion that Lejon had experienced "changes" in her cognitive capacity and that she had "mild limitations" in attention and concentration and "normal" memory. It is also consistent with Dr. Meharg's conclusion that "nothing particular" in Lejon's neurocognitive profile would "necessarily preclude gainful employment." Lejon does not identify any specific issues in the ALJ's analysis of other medical evidence, and this court's role is not to "reweigh the evidence" before the ALJ. *Ahearn*, 988 F.3d at 1115. Accordingly, the ALJ's consideration of the medical evidence is supported by substantial evidence and is not based on legal error.

2. Neither did the ALJ err in finding Lejon's subjective testimony inconsistent with the medical evidence. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The ALJ, however, may reject the subjective testimony "only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (cleaned up). "Ultimately, the

'clear and convincing' standard requires an ALJ to show [her] work . . . . The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ's reasoning here was sufficient. The ALJ expressly considered Lejon's subjective statements about her difficulties with pain, memory, and concentration. However, the ALJ explained that "a neuropsychological assessment revealed that while the claimant had low scores on the lower cognitive demand tests for digital span and trail making, [Lejon] was able to rally her attentional skills to produce normal performance results as the tests became more complex." The ALJ also cited Lejon's history of conservative treatment, "normal mental status findings of memory, judgment, fund of knowledge, behavior, speech, thought content, grooming, hygiene, mood, and affect," and "normal clinical findings of strength, sensation, reflexes, and gait." *See Smartt*, 53 F.4th at 498–500 (finding no error where ALJ provided similar reasons for discounting subjective testimony).

And contrary to Lejon's claims, the ALJ did not reject or undercut the subjective evidence based solely on the medical record, though "[c]ontradiction with the medical record is a sufficient basis for" doing so. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Indeed, the ALJ pointed to

4                                                                                    23-3216

other, nonmedical evidence—including Lejon's ability to play games, exercise independently, and manage two dogs—as undercutting the subjective claims of a severe impairment. *See Smartt*, 53 F.4th at 499–500 (upholding ALJ's consideration of a claimant's daily activities as inconsistent with alleged impairment).

3. The ALJ properly considered the testimonies of Lejon's mother, friend, and pastor. "The ALJ was required to consider and comment upon competent lay testimony." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ did so here. The ALJ explicitly relied on lay testimony indicating Lejon's "cognitive decline in memory and concentration" as support for the RFC determination. However, the ALJ also explained where lay testimony regarding the *extent* of Lejon's cognitive decline was inconsistent with medical evidence. Contrary to Lejon's claims, the ALJ therefore did not disregard this lay evidence.

4. Finally, because none of the evidence was "improperly rejected [or] ignored," the ALJ did not err in limiting the hypothetical posed to the vocational expert (VE) and later relying on the VE's response. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). More to the point, the VE only discussed jobs that match Lejon's RFC, which prohibits anything beyond light work subject to various conditions.

**AFFIRMED.**